**In re NEWTOWNE, INC., and Enwotwen Industries, Inc., Debtors.**

**ENWOTWEN INDUSTRIES, INC., Plaintiff,**

v.

**BROOKSTONE LIMITED PARTNERSHIP, et al., Defendants.**

**Bankruptcy No. 93–50474.
Adv. Pro. No. 2–93–0036.**

United States Bankruptcy Court, S.D. Ohio, E.D.

June 25, 1993.

E. James Hopple, Nora E. Jones, Schottenstein, Zox & Dunn, Columbus, OH, for defendants, Brookstone Ltd. Partnership and Brookstone Properties, Inc.

Robert Sidman, Vorys, Sater, Seymour & Pease, Columbus, OH, for defendant, Indiana Nat. Bank.

Office of U.S. Trustee, Columbus, OH.

Michael Kranitz, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for Official Committee of Unsecured Creditors of Enwotwen, Inc.

Thomas R. Noland, Robert B. Berner, Altick & Corwin, Dayton, OH, for plaintiff.

Sara J. Daneman, J. Anthony Kington, Chester, Hoffman, Willcox & Saxbe, Columbus, OH, for Official Committee of Unsecured Creditors of Newtowne, Inc.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

BARBARA J. SELLERS, Bankruptcy Judge.

Enwotwen Industries, Inc. ("Enwotwen") filed this adversary proceeding against Brookstone Limited Partnership ("Brookstone"), Brookstone Properties, Inc. and Indiana National Bank to recover certain real property known as the Brookstone Apartments ("the Property"). Enwotwen transferred the Property to Brookstone within forty-five days of the filing of Enwotwen's voluntary Chapter 11 petition. Enwotwen alleges that the transfer is avoidable either as a preferential transfer under 11 U.S.C. § 547 or as a fraudulent transfer pursuant to 11 U.S.C. § 548 or applicable state law. Brookstone raises numerous defenses and concludes that the transfer may not be avoided.

Enwotwen seeks summary judgment against Brookstone on its alternative claims. The Court has reviewed each party's written arguments, depositions and exhibits. Based upon this review, the Court finds that no genuine issue of material fact exists as to Enwotwen's claim under 11 U.S.C. § 548(a)(2) and Enwotwen is entitled

to judgment as a matter of law. The Court expresses no opinion on Enwotwen's remaining theories of recovery. Determination of those remaining claims is reserved for a later time, if so required.

The Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) which this bankruptcy judge may hear and determine.

### I. The Parties and the Transactions.

### A. Enwotwen and Newtowne.

Enwotwen is an Ohio corporation with four shareholders, each of whom owns 25% of the debtor's stock. Enwotwen owned the Property until it transferred the Property to Brookstone in late December, 1992. At the time of the transfer, the Property was Enwotwen's sole source of income.

Newtowne, Inc. ("Newtowne"), also a Chapter 11 debtor before this Court, is an Ohio corporation owned by the same individuals who own Enwotwen. Each of those individuals also holds a 25% interest in Newtowne. Newtowne operates as a real estate development and construction company.

### B. Brookstone Limited Partnership.

Brookstone is an Ohio limited partnership which was created in late December, 1992 and received the transfer of the Property. Brookstone Properties, Inc. serves as Brookstone's general partner and James B. Dlugos and Thomas D. Wittkopf are Brookstone's two limited partners. It is the business relationship and prior transactions between Dlugos and Wittkopf on one hand and Newtowne on the other which are at the heart of the present dispute.

### C. Transactions Lending to the Transfer of the Property.

Through various corporations and limited partnerships, Dlugos and Wittkopf are involved in several real estate development projects. Two of those projects are relevant to this adversary proceeding. Newtowne served as the general contractor for the construction of both of these projects. Enwotwen, however, had no independent connection with either project. Newtowne does not seriously dispute that during 1992, it diverted for Newtowne's use funds intended for these projects. It also is not seriously disputed that Dlugos and Wittkopf personally paid certain subcontractors on these projects who should have been paid by Newtowne from the construction funds it held.

Sometime after the diversion of funds, but before the transfer of the Property, Newtowne, Dlugos and Wittkopf came to an agreement designed to resolve their disputes. That agreement culminated on December 22, 1992 with the transfer by Enwotwen of its Property to Brookstone. The agreement also resulted in the execution of certain promissory notes by Newtowne and its principals, payable to the owners of the two real estate projects.

### II. The Positions of the Parties on the Fraudulent Transfer Cause of Action.

Enwotwen's position is straightforward. It transferred a valuable piece of income-producing property for no consideration. Enwotwen contends that it received no value from that transfer from Brookstone or from Dlugos or Wittkopf. Further, Enwotwen contends that it had no debt to Brookstone, Dlugos or Wittkopf that could have been forgiven by the transfer of its Property.

Brookstone views the facts quite differently. It contends that this Court, using equity powers, should treat Newtowne and Enwotwen as one legal entity. If the corporate identities are thus merged, Brookstone contends the assets and liabilities also would be merged. Newtowne's debts would become Enwotwen's debts and, thus, there would be no fraudulent transfer.

Brookstone alternatively contends that even if the separate corporate identities of Enwotwen and Newtowne remain, Enwotwen received an "indirect benefit" from the transfer of its Property. Brookstone contends that the parties understood that the transfer would extinguish certain debts

flowing from Enwotwen to Newtowne. Thus, Brookstone concludes that Enwotwen received a benefit for the transfer of the Property through the forgiveness of its debt to Newtowne.

### III. Conclusions of Law.

### A. Standard for Summary Judgment.

Summary judgment should be awarded if the movant establishes "that there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) as applicable through Fed.R.Bankr.P. 7056. The movant carries the initial burden of identifying those portions of the documents on file and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party then "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1985).

### B. Newtowne and Enwotwen as a Single Legal Entity.

■ Brookstone contends that Newtowne and Enwotwen should be treated as a single entity for purposes of this adversary proceeding and each corporation's assets and liabilities should be consolidated. Under appropriate circumstances, a court may ignore formal corporate structures. *Bucyrus–Erie Co. v. General Products Corp.*, 643 F.2d 413 (6th Cir.1981). The *Bucyrus–Erie* court relied upon Ohio law and established certain facts a court should consider before ignoring corporate identities. Those facts are: "(1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." 643 F.2d at 418.

■ The notion that the control exercised over the corporation is "to commit fraud" is supported in Ohio law. *North v. The Higbee Co.*, 131 Ohio St. 507, 3 N.E.2d 391 (1936). "The separate entities of a parent and subsidiary corporation will not be disregarded ... in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud the complainant." 131 Ohio St., syllabus, 3 N.E.2d 391. The court in *North* recognized that ignoring the corporate identity required the plaintiff to show more than merely an identity of shareholders between the two corporations. 131 Ohio St. at 513, 3 N.E.2d 391. Such an identity of shareholders does not "merge [the corporations] into one, so as to make a contract of one corporation binding upon the other". *North*, 131 Ohio St. at 514, 3 N.E.2d 391. Rather, "it must appear that to recognize their separate entities would aid in the consummation of a wrong." *North*, 131 Ohio St. at 515, 3 N.E.2d 391.

■ Brookstone concludes that because Newtowne and Enwotwen have the same shareholders, share office space, share one telephone line and may have shared expenses, that a genuine factual issue exists as to whether Newtowne and Enwotwen should be treated as one legal entity. Even if the Court accepts those allegations as true, merger of the corporate identity of Enwotwen with that of Newtowne does not necessarily follow.

Brookstone asserts that "Newtowne clearly possessed domination and control over Enwotwen." (p. 21). However, there is no evidence to support this bare assertion or even to raise a factual issue. The relationship between Newtowne and Enwotwen is not that of parent and subsidiary. Rather, the relationship is better characterized as that of sister corporations. Neither Newtowne nor Enwotwen hold any interest in the other. Thus, it is impossible for *Newtowne, as a corporation*, to exercise any control over Enwotwen. The only common element between the two is the identity of the shareholders of each corpo-

ration. The control asserted by Brookstone simply cannot exist under the existing structural relationship of Newtowne and Enwotwen.

Moreover, law developed to pierce the corporate veil provides a basis to hold the domineering entity responsible for the debts of the entity over which the control is asserted. However, it is not Enwotwen's debts for which Brookstone seeks to hold Newtowne liable. Brookstone contends that Newtowne controlled Enwotwen, not the other way around. Brookstone seeks to hold Enwotwen responsible for Newtowne's debts so it can show that when Enwotwen transferred its property to Brookstone, Enwotwen received consideration by the extinguishment of a debt of Newtowne. Thus, even if Newtowne could exercise any control over Enwotwen, the conclusion asserted by Brookstone does not follow. Brookstone would have to argue that Enwotwen exercised control over Newtowne to hold Enwotwen responsible for the debts of Newtowne. The facts as presented to the Court do not support that argument.

■ Brookstone also seems to argue that Newtowne and Enwotwen should be merged so that the corporate debt of one is also the debt of the other. Merger of corporate entities is governed by statute in Ohio. Ohio Rev.Code § 1701.78. Under the statute, merger is a definite, affirmative act which requires approval by the directors and adoption by the shareholders of each corporation. Ohio Rev.Code § 1701.78(D). There is no evidence that Enwotwen and Newtowne have been merged pursuant to Ohio Rev.Code § 1701.78.

### C. *The Transfer as Fraudulent to Creditors.*

■ A trustee or debtor-in-possession may avoid a debtor's transfer of property made within one year of the filing of a bankruptcy petition if: (1) the debtor "received less than a reasonably equivalent value in exchange for such transfer" and; (2) the debtor was insolvent at the time of the transfer or rendered insolvent by the

transfer. 11 U.S.C. § 548(a)(2). The trustee or debtor-in-possession has the burden of establishing each of these elements. *Murphy v. General Electric Credit of Tennessee (In re Rodriquez),* 77 B.R. 939, 940 (Bankr.S.D.Fla.1987) *aff'd,* 895 F.2d 725 (11th Cir.1990). This avoidance power is afforded the trustee or debtor-in-possession because such transfers "diminish the assets of the debtor to the detriment of all creditors." *Kleinfield v. Donovan (In re Royal Coach County, Inc.),* 125 B.R. 668, 673 (Bankr.M.D.Fla.1991).

### 1. *Reasonably Equivalent Value*

■ A transfer will not be avoided under § 548(a)(2) of the Bankruptcy Code if the debtor received "reasonably equivalent value" in exchange for the transfer of property. Although "reasonably equivalent value" is not defined by the Bankruptcy Code, many courts have interpreted its meaning in the context of § 548(a)(2). A common theme running through these decisions is the effect of the transfer on the debtor's balance sheet. The degree to which the debtor's net worth is preserved is a primary consideration. *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 992 (2d Cir.1981). *See, also, Johnson v. First National Bank,* 81 B.R. 87, 88 (Bankr.N.D.Fla.1987). If the debtor's net worth is maintained, its creditors cannot complain of the transfer. *Rubin,* 661 F.2d at 991.

■ If the debtor directly receives value for the transferred property, the court only needs to compare the value received with the value given up by the debtor. *Heritage Bank Tinley Park v. Steinberg (In re Grabill Corporation),* 121 B.R. 983, 994 (Bankr.N.D.Ill.199ɔ). The value of the property transferred should be comparable to the benefit received to save the transfer from avoidance. *Rubin,* 661 F.2d at 991–992.

■ The analysis is slightly more complicated when the transfer involves a third party because the benefit to the debtor may be harder to trace. A court should "examine all aspects of the transaction and

carefully measure the value of all benefits and burdens to the debtor, direct or indirect." *Pembroke Development Corporation v. Commonwealth Savings & Loan (In re Pembroke Development Corporation)*, 124 B.R. 398, 400 (Bankr.S.D.Fla. 1991). The focus always is on the economic benefit, if any, flowing to the debtor as a result of the transfer. *See, Rubin*, 661 F.2d at 991 and *Grabill*, 121 B.R. at 995.

One factual pattern involves a debtor's discharge of a third party's debt. If, as a result of the debtor's payment of a third party's debt, a debt of the debtor to that third party is also discharged, that may be enough to establish "reasonably equivalent value". *Uiterwyk Corporation v. Maher Terminals, (In the Matter of Uiterwyk Corporation)*, 75 B.R. 33, 34 (Bankr. M.D.Fla.1987). The focus remains on the economic benefit conferred on the debtor and the overall effect of the benefit on the debtor's net worth position.

Another common fact pattern occurs where the "debtor and the third party are so related or situated that they share an identity of interests because what benefits one will, in such a case benefit the other to some degree." *Pembroke*, 124 B.R. at 400. In *Pembroke*, a creditor promised to forebear collection of a note held by an entity related to the debtor in exchange for a payment by the debtor. Because the debtor was a guarantor on the initial note, the creditor's forbearance could easily be characterized as a direct benefit to the debtor-guarantor. Thus, in *Pembroke* it was not necessarily the identity of interests, but rather the direct benefit to the debtor which led the court to refuse to avoid the transfer.

Similarly, where a debtor enjoys the benefits of the goods or services it bought for its principal, the transfer of money for those goods or services may not be avoided. *See, Hall v. Arthur Young and Company (In re Computer Universe, Inc.)*, 58 B.R. 28, 30 (Bankr.M.D.Fla.1986) and cases cited therein. In all these examples, the overriding factor is the economic benefit to the debtor as a result of the transfer. If the debtor's net worth is preserved after

the transfer, then the debtor has received reasonably equivalent value.

Enwotwen did not receive "reasonably equivalent value" for the transfer of its Property to Brookstone for the benefit of Dlugos and Wittkopf. The record is devoid of any evidence to show a benefit. There was no evidence of any obligation from Enwotwen to Brookstone, Dlugos or Wittkopf. Evidence exists which tends to show a debt from Enwotwen to Newtowne arising from intercompany transactions (Wisehart Depo., p. 17). Additionally, the deposition testimony and exhibits showed that some of the diverted funds from the construction accounts either were directly drawn to the order of Enwotwen or were deposited into an operating account for the benefit of Enwotwen. The transactions created additional obligations from Enwotwen to Newtowne.

The missing link, however, is any showing that Newtowne forgave Enwotwen's debt as a result of the transfer of the Property from Enwotwen to Brookstone on account of Newtowne's debt to Dlugos and Wittkopf. This showing is crucial under the "indirect benefit" analysis proffered by Brookstone and supported in *Uiterwyk*, 75 B.R. at 34. Without this forgiveness, Enwotwen received no benefit. A review of its balance sheet shows a substantial decline in Enwotwen's net worth and supports a conclusion that Enwotwen did not receive a "reasonably equivalent value" for the transfer of its Property. See *Rubin*, 661 F.2d at 992. There is no evidence establishing any genuine issue of fact as to whether Enwotwen received any economic benefit as a result of the transfer. It clearly did not.

Enwotwen and Newtowne did not share an identity of interests such that a benefit to Newtowne also flowed to Enwotwen as contemplated in *Pembroke*, 124 B.R. at 400. Enwotwen is not a guarantor from which Brookstone has agreed to forbear collection in exchange for the Property. The facts of this dispute clearly are distinguishable from those in *Pembroke*.

Said simply, this is the precisely the type of transfer proscribed and made avoidable by 11 U.S.C. § 548(a)(2). Enwotwen transferred its only major asset to pay Newtowne's debts. As a result, Enwotwen's net worth diminished greatly. This is the focus of the fraudulent transfer analysis under 11 U.S.C. § 548(a)(2)(A). *Rubin*, 661 F.2d at 992. The transaction is complicated further because Brookstone had no debt from either Newtowne or Enwotwen. The debt flowed between Newtowne, on the one hand, and Dlugos and Wittkopf on the other. Brookstone neither suggested nor presented evidence establishing any genuine factual issue of economic benefit to Enwotwen as a result of the transfer of the Property. Accordingly, the Court finds that Enwotwen did not receive a "reasonably equivalent value" from any party as a result of the transfer of its Property to Brookstone for the benefit of Dlugos and Wittkopf.

### 2. *Insolvency.*

The second prong of a fraudulent transfer under 11 U.S.C. § 548(a)(2) focuses on the financial condition of the debtor at the time of the transfer or shortly thereafter. Enwotwen relies upon subsection (B)(i) of § 548(a)(2) and contends that the transfer of its Property rendered it insolvent. Brookstone does not dispute or even address this issue in the context of its defense against the fraudulent transfer cause of action.

■ "Insolvency" is defined as a "financial condition such that the sum of [an] entity's debt is greater than all of such entity's property." 11 U.S.C. § 101(32)(A). This definition adopts a balance sheet analysis. *See, Willis v. Borg–Warner Acceptance Corporation (In re Willis)*, 48 B.R. 295, 301 (S.D.Tex.1985).

In support of its position, Enwotwen offered the affidavit of Francis A. Wisehart, the keeper of its books and records for two and one-half years. In his affidavit, Wisehart inferred that even before the transfer of its Property, Enwotwen's total debt exceeded its total assets. He further stated that the Property represented 93% of Enwotwen's assets. Further, the transfer did not relieve Enwotwen of its liabilities.

The Court finds that no genuine issue of material fact exists as to Enwotwen's insolvency as a result of the transfer of its property to Brookstone. Brookstone did not even address the solvency issue as it related to the fraudulent transfer count. Accordingly, for purposes of the fraudulent transfer cause of action, Enwotwen was clearly made insolvent or more insolvent by the transfer.

### IV. CONCLUSION

Based upon the foregoing analysis, the Court concludes that Enwotwen is entitled to summary judgment on its claim under 11 U.S.C. § 548(a)(2). No genuine issues of material fact exist as to this cause of action. Enwotwen transferred its major asset, the Property, to Brookstone and did not receive reasonably equivalent value in exchange for that transfer. Further, Enwotwen was rendered insolvent as a result of the transfer.

Accordingly, Enwotwen is entitled to judgment, as a matter of law, on its claim under 11 U.S.C. § 548(a)(2). Such judgment means that the transfer is avoided and the Property is returned to Enwotwen's bankruptcy estate. Decision is reserved on all other counts raised in the complaint.

IT IS SO ORDERED.